AUSTIN P. NAGEL, ESQ.
California State Bar #118247
LAW OFFICES OF AUSTIN P. NAGEL
111 Deerwood Road, Suite 305
San Ramon, CA 94583
Telephone: (925) 855-8080
Facsimile: (925) 855-8090

Attorneys for Secured Creditor,
GATEWAY ONE LENDING & FINANCE

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>DAVID J. ALMADI,<br><br>    Debtor.<br>_____ / | Case No. 2:16-bk-18174-SK<br>(Chapter 13 Proceeding)<br><br>SECURED CREDITOR, GATEWAY ONE LENDING & FINANCE's OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN<br><br>**MEETING OF CREDITORS**:<br>Date: July 29, 2016<br>Time: 10:00 a.m.<br>Ctrm: Room 1,<br>    915 Wilshire Blvd., 10th Floor,<br>    Los Angeles, CA<br>**CONFIRMATION HEARING**:<br>Date: September 1, 2016<br>Time: 10:00 a.m.<br>Ctrm: 1575,<br>    255 E. Temple St.,<br>    Los Angeles, CA |

      GATEWAY ONE LENDING & FINANCE (hereinafter referred to as "Secured Creditor") objects to confirmation of the Chapter 13 Plan proposed hereunder by Debtor, DAVID J. ALMADI (hereinafter referred to as "Debtor") on the following grounds:

///

1

1. On October 29, 2014, Debtor (as Buyer) entered into a written Retail Installment Sale Contract – Simple Interest Finance Charge (hereinafter referred to as "Security Agreement") with Benz Boyz (as Seller) which evidenced Debtor's financed purchase of the 2007 Mercedes-Benz GL-Class (Vehicle Identification Number 4JGBF71E07A239350) (hereinafter referred to as the "property"), which has become the subject of this action. The aforementioned Security Agreement was duly assigned by Benz Boyz to Secured Creditor during the normal course of business on or about October 29, 2014.

2. Upon executing the Security Agreement, a true and correct photocopy of which is filed separately herewith and which is incorporated herein by reference, and by subsequently taking possession of the property which was being financed by Secured Creditor, Debtor agreed and became obligated to pay the sum of $14,011.95, with interest accruing at the contract rate of 9.99% per annum, for the financed purchase of the subject property. Further evidence of Secured Creditor's secured position is reflected on the Certificate of Title for the subject property, a true and correct photocopy of which is filed separately herewith and which is incorporated herein by reference.

3. As mandated by 11 U.S.C. § 1325, et seq., the value of Secured Creditor's secured collateral must be the $10,436.16 which was due and owing on Debtor's account with Secured Creditor at the time of the Debtor's filing of the above-captioned case. More specifically, as noted on the prevailing Security Agreement, Secured Creditor has a purchase money security interest securing the debt which is the subject of its claim against Debtor and the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle acquired for the personal use of Debtor.

///

4.    Secured Creditor objects to Debtor's Plan in light of the fact that Debtor has attempted to avoid paying Secured Creditor interest on its secured claim. Secured Creditor objects to the Plan because the proposed interest rate of 0.00% is less than the guidelines provided in Till vs. SCS Credit Corp. 541 U.S. 465, 124 SCt 1951, 158 L.Ed. 2d 787 (2004) (In re Till). In the Till case, the Supreme Court found that the appropriate rate of interest when a debtor is "cramming down" the value of collateral pursuant to 11 U.S.C. Section 1325(a)(5)(B)(ii) is the "prime-plus" or "formula rate" which augments the national prime rate to account for the risk of nonpayment by the debtor. The Supreme Court refused to determine the proper scale for risk adjustment, but noted that other courts have approved adjustments of 1.5% to 3%. The Prime Rate was 3.50% at the time the Debtor filed this case.

5.    Secured Creditor further objects to the $150.00 monthly pre-confirmation adequate protection payments offered it under Debtor's proposed Plan in that the value of Secured Creditor's security will depreciate at a much higher rate than that at which Secured Creditor will receive adequate protection payments under the Plan.

6.    Secured Creditor believes that if it is forced to accept its inclusion under Debtor's Plan as is presently proposed, Secured Creditor will be prejudiced by its position thereunder and Secured Creditor will continue to suffer substantial, mounting losses.

WHEREFORE, SECURED CREDITOR RESPECTFULLY MOVES:

1.    That, based upon the risk factors set forth more fully above, as well as others that may exists, confirmation of this Chapter 13 Plan be denied; or, in the alternative,

2.    That Debtor's Plan hereunder be amended in order to allow Secured Creditor to receive pre- and post-confirmation adequate protection payments of no less than $319.86 per month;

1        3.     That Secured Creditor's secured claim accrue interest at the fair market rate of

2 6.50% per annum.

3 Dated: July 6, 2016             LAW OFFICES OF
AUSTIN P. NAGEL

*/s/ Austin P. Nagel*

Attorneys for Secured Creditor,
GATEWAY ONE LENDING & FINANCE

GTBK.83

4

1  AUSTIN P. NAGEL, ESQ.
   California State Bar #118247
2  LAW OFFICES OF AUSTIN P. NAGEL
   111 Deerwood Road, Suite 305
3  San Ramon, California 94583
   Telephone: (925) 855-8080
4  Facsimile: (925) 855-8090
5
   Attorneys for Secured Creditor,
6  GATEWAY ONE LENDING & FINANCE
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10 In Re:                              Case No. 2:16-bk-18174-SK
                                       (Chapter 13 Proceeding)
11 DAVID J. ALMADI,
                                       EXHIBITS IN SUPPORT OF SECURED
12         Debtor.                     CREDITOR, GATEWAY ONE LENDING
                                       & FINANCE'S OBJECTION TO
13 _____/        CONFIRMATION OF
                                       CHAPTER 13 PLAN
14
15
16
17 | EXHIBIT | TITLE/DESCRIPTION OF DOCUMENT | NO. OF PAGES |
   |---------|-------------------------------|--------------|
   | A       | Security Agreement            | 2            |
   | B       | Certificate Of Title          | 1            |
18
19 GTBK.83

RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE

Dealer Number: 44028  Contract Number: 55531904  R.O.S. Number: 55531904  Stock Number: 82926

Buyer Name and Address (including County and Zip Code): DAVID J ALMADI, 22805 MOUNTAIN LAUREL WAY, Diamond Bar, CA 91765, Los Angeles

Seller-Creditor (Name and Address): BENZ BOYZ, 13720 BEACH BLVD., WESTMINSTER, CA 92683

New/Used: Used | Year: 2007 | Make and Model: MERCEDES-BENZ GL-CLASS | Odometer: 93785 | VIN: 4JGBF71E07A239356 | Primary Use: Personal

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 9.90% | $3042.93 | $14011.95 | $17054.88 | $22,554.88 |

Total downpayment: $5,500.00

Payment Schedule: 47 payments of $355.31 monthly beginning 11/28/2014; One final payment of $355.31 on 10/28/2018

Itemization of Amount Financed:
1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories: $17,500.00 (A)
      1. Cash Price Vehicle: $17,500.00
      2. Cash Price Accessories: $0.00
   B. Document Processing Charge: $80.00 (B)
   C. Emissions Testing Charge: $50.00 (C)
   J. Sales Tax: $1,588.70 (J)
   Total Cash Price (A through T): $19,218.70

2. Amounts Paid to Public Officials
   A. Vehicle License Fees: $262.00 (A)
   B. Registration/Transfer/Titling Fees: $25.00 (B)
   Total Official Fees: $287.00

4. Emissions Certification Fee: $8.25
5. Subtotal: $19,511.95
6. Total Downpayment:
   A. Agreed Trade-In Value: 2001 Mercedes-Benz M-Class, VIN 4JGAB54E71A226271, $2,500.00
   B. Less Prior Credit or Lease Balance: -$2,500.00
   G. Cash: $5,500.00
   Total Downpayment: $5,500.00
7. Amount Financed: $14,011.95



EXHIBIT A

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods installed on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law shows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property;
   - The vehicle is lost, damaged or destroyed; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.
g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **Applicable Law**
Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**
If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.
If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.
If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.
If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

> **Seller's Right to Cancel**
> a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.
> b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.
> c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.
> d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | Gateway One Lending & Finance | (Assigned at address) |
|---|---|---|
| BENZ BOYZ | PO BX 1019 | under the terms of Seller's agreement(s) with Assignee. |
| 13720 BEACH BLVD | Atwood, CA 92811 | ☐ Assigned with limited recourse |
| WESTMINSTER, CA 92683 | | |
| (714) 373-0111 | By _____ | Title _____ |

Form No. 553-CA 7/13

EXHIBIT A



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Gateway One

## Lien and Title Information

### Lienholder

| | |
|---|---|
| ELT Lien ID | W66 |
| Lienholder | GATEWAY ONE LENDING FIN |
| Lienholder Address | PO BX 1013<br>ATWOOD, CA 92811 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 4JGBF71E07A239350 | Issuance Date | 3/6/2015 |
| Title Number | | Received Date | 3/8/2015 |
| Title State | CA | ELT/Paper | ELECTRONIC |
| Year | 2007 | Odometer Reading | 93785 10/29/2014 |
| Make | MERZ | Branding | |
| Model | | | |
| Owner 1 | ALMADI DAVID J | | |
| Owner 2 | | | |
| Owner Address | 22805 MOUNTAIN LAUREL WAY<br>DIAMOND BAR, CA 91765 | | |

Printed: Wednesday, June 22, 2016 2:09:22 PM PST

EXHIBIT B

https://title.fdielt.com/MVC/CollateralPrint/CollateralPrint?view=CollateralPrint&a...    6/22/2...

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

111 Deerwood Rd., Suite 305, San Ramon, CA 94583

A true and correct copy of the foregoing document entitled (*specify*):  __SECURED CREDITOR, GATEWAY ONE LENDING & FINANCE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN and the EXHIBITS IN SUPPORT OF SECURED CREDITOR, GATEWAY ONE LENDING & FINANCE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN__

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 6, 2016 _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

David J. Almadi
22805 Mountain Laurel Way
Diamond Bar, CA 91765

Arsen Pogosov, Esq.
7220 N. Rosemead Blvd.
Suite 202-5
San Gabriel, CA 91775

Kathy A. Dockery
Chapter 13 Trustee
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Judge Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 6, 2016 | Melissa Alcorn | /s/ Melissa Alcorn |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                            F 9013-3.1.PROOF.SERVICE